This reading of these provisions of the statute makes the damages collected in such an action assets for the purpose of the payment of funeral expenses.

The application is granted, and leave is given to issue an execution for the sum of $100, with interest from the date of respondent's answer, being the amount admitted to be in the hands of the administrator.

Application granted.

---

(49 Misc. Rep. 413.)

### In re PRIMMER'S ESTATE.

(Surrogate's Court, Rensselaer County. February, 1906.)

1. EXECUTORS AND ADMINISTRATORS—CLAIMS AGAINST ESTATE.

A claim against an estate, filed by the executor for services in burying the husband of testatrix eight years before her death, is barred by limitations.

[Ed. Note.—For cases in point, see vol. 22, Cent. Dig. Executors and Administrators, §§ 749, 760.]

2. LIMITATION OF ACTIONS—PAYMENTS ON ACCOUNT.

The payment of $40 on account, which is not shown to have been made within six years before the death of testatrix, does not avail to take the claim against her estate out of the statute.

[Ed. Note.—For cases in point, see vol. 33, Cent. Dig. Limitation of Actions, § 646.]

3. EXECUTORS AND ADMINISTRATORS—FUNERAL EXPENSES.

Where the whole estate of testatrix did not exceed $500, the executor should not be allowed $329.50 for funeral expenses.

[Ed. Note.—For cases in point, see vol. 22, Cent. Dig. Executors and Administrators, §§ 436, 755.]

In the matter of the settlement of the estate of Catherine Primmer. Account of executor surcharged as to certain amounts.

Frank H. Deal, for executor.
James Farrell, for contestants.

HEATON, S. Two objections are made to the account of the executor on this judicial settlement. The executor is the son-in-law of the deceased, and is the undertaker who buried her husband about eight years before her death, and who buried her at her decease. He seeks to have allowed to him on this accounting the sum of $51, balance claimed to be due from the deceased to him for the burial of her husband, and $329.50 for her own funeral expenses.

Assuming that the proof is sufficient to show his employment by the deceased to bury her husband eight years and four months before her death, the statute of limitations had run against the claim before her death, unless a payment of $40, made by her from money received from her daughter's estate, kept the claim alive. The deceased had a daughter die about four months before her husband died, from whom she received $40, which was applied upon this debt. There is no evidence that this payment was made within six years before the death of

the deceased. The executor is bound to prove his debt in this proceeding, and, as such executor, he must be held as strictly to the rule of proof as a stranger would be. The objections filed raise the statute of limitations, and the claim upon its face was over eight years old when the deceased died. The executor has not shown that the payment made to him was made within six years of the death of the deceased. During all the time after her husband's death, the deceased was possessed of property and ready money from which the debt could have been paid, and during the last few years of her life she lived with the executor, and he collected her rents, and, after her real estate was sold, from time to time handled her money. This is one of the stale claims which ought not to be allowed except upon the most clear and convincing proof, and it is therefore disallowed.

Objection was also made to the expenditure of $329.50 for the burial of the deceased by the executor, on the ground that such expenses were extravagant, and not according to her station in life or property. The items of the bill furnished include $180 for a casket, $25 for an oak outside box, and disbursements for six carriages, for flowers and palms, robe, music, etc. That the amounts were the ordinary charges for the services and the articles furnished is not disputed. It was shown that the executor knew that the estate did not exceed about the sum of $500, and from the account it appears that the total estate was just $500, and the total disbursements sought to be charged against it were $472.50, of which charge $380.50 is claimed by the executor for the undertaker's two bills in question. A person who furnishes burial is entitled to be reimbursed for the reasonable expenses of such burial, but he need not necessarily be reimbursed from the estate for the whole charge so incurred. A person who contracts funeral expenses is personally liable to pay the same, and may contract for as elaborate and expensive a funeral as he desires; but when he seeks to be reimbursed from the estate, he will be allowed only such a sum as the surrogate deems to be a reasonable expenditure for such purpose, when the estate left by the deceased and his station in life are duly considered. There is a tendency toward greater and greater ostentatious display on such occasions, which is often wholly inconsistent with the mode of life of the deceased. Those persons who contract these large expenses very often seem to feel that there is no limit placed upon their right to appropriate the estate for such purposes; but very many times, were they to pay the amount themselves, the funeral would be more in keeping with the condition in life of the deceased. Where objection to the amount of the undertaker's bill is made, the surrogate must always take these matters into consideration, and, no matter how expensive a funeral has been ordered, should allow from the estate only so much of the expense as is reasonable and proper under the circumstances. In this case the executor of the will was the undertaker, and was the son-in-law of the deceased, and the funeral took place from his house. He knew that the estate did not exceed $500, and that there were doctor's bills and other debts to be paid therefrom. If he desired to give his mother-in-law an elaborate and expensive funeral, he had the right to do so; but he has no right to be reimbursed from

this small estate for the expenses of a funeral which was not in keeping with her mode of life and her estate. It is significant that, when the husband of the deceased died, and she was worth much more property than she was at the time of her death, the expense of burial of her husband, contracted by her with this same undertaker, was $91.

It is not an uncommon thing for the accounts of executors and administrators to contain charges for burial expenses amounting to several hunderd dollars, and in some cases amounting to more than $1,000. There is no doubt that this condition arises from the desire of the undertaker employed to furnish as expensive a funeral as he can induce the friends to order, and from the fact that those relatives who make the arrangements are at the time unduly influenced by their grief and affection to such an extent that they are easily led to incur expenses which, when the rights of other interested parties are considered, they have no legal right to contract. While such disbursements are often known by the surrogate and by interested parties to be unwarranted and extravagant, it is very seldom that an objection to their allowance is made, so that there has come to be a feeling among the undertakers and other persons interested that whatever expense is incurred for funeral expenses will be allowed as a matter of course; and the result has seemed to be that funeral expenses have continued to increase from year to year. Whenever a surrogate is given an opportunity, he should not hesitate to condemn this growing evil, and thereby prevent, as far as possible, such unauthorized and improper use of the funds of an estate. The position which this executor occupied placed upon him the moral and legal obligation to derive no improper benefit out of this funeral. Experience has shown that a funeral entirely fitting and proper for a woman of the style of living and value of the estate of Mrs. Primmer could be furnished for a sum not exceeding $150, and that amount will be allowed in this case. Wherever an undertaker is requested by the friends to furnish a funeral more expensive than is warranted by the mode of living and the value of the estate of the deceased, he may properly protect himself by an appropriate contract, based upon the personal obligation of the parties contracting the debt.

Let the account be surcharged as above indicated. Decreed accordingly.