(79 Misc. Rep. 224.)

### CÆSAR et al. v. BERNARD et al.

(Supreme Court, Appellate Term, First Department. February 7, 1913.)

CORPORATIONS (§ 545*)—INSOLVENCY—TRANSFERS—PREFERENCES—LIABILITY OF DIRECTORS—"SUCH" CORPORATION.

Under Stock Corporation Law (Consol. Laws 1909, c. 59) § 66, providing that no corporation "which shall have refused to pay any of its notes or other obligations" when due shall make certain transfers of property, and that no transfer of any property of any "such" corporation, when it is insolvent or its insolvency is imminent, with intent to prefer particular creditors, shall be valid, and declaring its directors liable for violation of any provision of the section, for the directors to be liable for a preferential transfer the corporation must have, before the transfer, refused to pay an obligation; there being nothing else to which "such" can refer.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2170–2175; Dec. Dig. § 545.*

For other definitions, see Words and Phrases, vol. 7, pp. 6750–6754; vol. 8, p. 7808.]

Appeal from City Court of New York, Special Term.

Action by Henry A. Cæsar and another, partners as H. A. Cæsar & Co., against Robert W. Bernard and others. From three orders granting motions made by certain defendants for judgment on the pleadings, plaintiffs appeal. Affirmed, with leave to appeal to the Appellate Division.

Argued January term, 1913, before SEABURY, LEHMAN, and PAGE, JJ.

Hirsch, Scheuerman & Limburg, of New York City (Henry L. Scheuerman, Herbert R. Limburg, and Harry F. Mela, all of New York City, of counsel), for appellants.

Richard H. McIntyre, Jr., of Brooklyn, and W. Cleveland Runyon, of New York City, for respondent William M. Bernard.

John Elton Wayland, of New York City, for respondent Robert W. Bernard.

Claudius A. Hand, of New York City, for respondent Runyon.

LEHMAN, J. The plaintiff, a judgment creditor of the Wyckoff Trading Company, has brought an action against directors of that corporation for alleged violations of section 66 of the Stock Corporation Law, in that they made conveyances, assignments, and transfers of

property of the corporation while it was insolvent or its insolvency was imminent with intent to prefer particular creditors. Three of the defendants moved for judgment on the pleadings. The plaintiffs appeal from the orders granting these motions.

The complaint fails to allege, and the plaintiff does not claim, that at the time of the alleged preferences the corporation had refused to pay any of its notes or other obligations; but he relies upon the second sentence of section 66 of the Stock Corporation Law, which provides that:

"No conveyance, assignment or transfer of any property of any such corporation by it or by any officer, director or stockholder thereof, nor any payment made, judgment suffered, lien created or security given by it or by any officer, director or stockholder when the corporation is insolvent or its insolvency is imminent, with the intent of giving a preference to any particular creditor of the corporation shall be valid," etc.

It is the contention of the plaintiff that a violation of this sentence occurs whenever a preference is given when a stock corporation is insolvent or its insolvency is imminent, regardless of whether the corporation had refused to pay any of its notes when due. The difficulty with plaintiff's contention is that this sentence does not provide that no corporation or its officers may give a preference to particular creditors, but provides only that no "such" corporation or its officers may do so. The word "such" can refer only to corporations of the class previously referred to, and the only class of corporations previously referred to is corporations which shall have refused to pay any of its notes or other obligations when due. Consequently we can give the statute the construction placed upon it by the plaintiff only if we entirely disregard the word "such."

The plaintiff argues that we have a right to disregard this word, because the Stock Corporation Law was not intended to change the general policy of the state, which by earlier statutes had provided against any insolvent corporation making any assignment with intent to prefer particular creditors. It is true that the statutes of this state, since the enactment of chapter 325 of the Laws of 1825, had provided against such preferences. The earlier statutes, however, differed in a material point from the statute under consideration. They merely provided a convenient means to enforce the rule, recognized in equity, that the capital of a corporation is a trust fund for all its creditors; but they did not provide for a personal liability on the part of officers or stockholders concerned in such illegal transactions. Moreover, though the courts found it necessary to give a liberal construction to the language of the earlier statutes in order to effectuate what they conceived was the purpose of the Legislature, such construction did not violate the language of the statute.

In this case, if we seek to effectuate what was perhaps the intent of the Legislature, we must construe a statute which provides for a liability not recognized by the common law, not only liberally, but in disregard of all rules of grammatical construction. It is true that in the case of O'Brien v. East River Bridge Co., 36 App. Div. 17, 55 N. Y. Supp. 206, the Appellate Division of this Department, Ingra-

ham, J., dissenting, held that the word "such" could be disregarded. That case was, however, reversed by the Court of Appeals (161 N. Y. 539, 56 N. E. 74, 48 L. R. A. 122), and though the reversal was placed squarely upon other grounds, still the majority opinion stated that "the statute in terms seems to apply only to a corporation 'which shall have refused to pay any of its notes or other obligations when due in lawful money of the United States,'" and that without a finding of such a fact there is much difficulty in applying this statute, even to a case where the payment was made to an officer or director. Since the Court of Appeals rendered that decision I have been unable to find a case where any appellate court has granted relief under the statute without a finding that the corporation had refused to pay any of its notes or other obligations.

I think, therefore, that, regardless of our own views as to the probable legislative intent, we must hold that the statute applies only to "such" corporations as have failed to pay their notes or other obligations.

The orders should be affirmed, with $10 costs and disbursements, with leave to appeal to the Appellate Division. All concur.