# In the United States Court of Federal Claims

No. 18-585C

(Filed: April 21, 2020)

|  |  |  |
|---|---|---|
| **KENNETH JOHN DIAS, JR.,** | ) | |
| | ) | Claim of breach of contract; cancellation of |
| Plaintiff, | ) | bid to buy residential property owned by |
| | ) | HUD; failure to satisfy a condition precedent |
| v. | ) | to contract formation |
| | ) | |
| **UNITED STATES,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

Hughie Duvall Hunt, II, Kemet Hunt Law Group, Inc., Beltsville, Maryland for plaintiff.

Michael Duane Austin, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C. for defendant. With him on the briefs were Joseph H. Hunt, Assistant Attorney General, Civil Division, and Robert E. Kirschman, Jr., Director, and Steven J. Gillingham, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.

## OPINION AND ORDER

LETTOW, Senior Judge.

Plaintiff, Kenneth John Dias, Jr., alleges that the United States, acting through the Department of Housing and Urban Development ("HUD" or "the government"), deprived him of the value of a residential property that he sought to purchase from HUD when the Department's agent arbitrarily canceled his bid on the property. The government, however, counters that plaintiff did not have an enforceable contract for the sale of property and did not incur any compensable damages. Pending before the court are the parties' cross-motions for summary judgment on two dispositive issues: (1) whether plaintiff had an enforceable contract; and if so, (2) whether plaintiff is entitled to damages for breach of contract. *See* Def.'s Mot. for Summary Judgment ("Def.'s Mot."), ECF No. 39; Pl.'s Mot. for Summary Judgment ("Pl.'s Cross-Mot."), ECF No. 43.

## BACKGROUND[1]

Plaintiff, Mr. Dias, placed a bid to purchase the residential property located at 6103 Edward Drive, Clinton, Maryland 20735 (the "property") on January 16, 2016.  Transfer Compl. ("Compl.") ¶ 10, ECF No. 12.[2]  The property at issue was owned by HUD, which was seeking to sell the property through its agent, HomeTelos, LP ("HomeTelos").  Compl. ¶ 10; Def.'s App. at 1-2.[3]  HomeTelos listed the property for sale on January 12, 2016.  Def.'s App. at 2.  HomeTelos received eighteen bids on the property, including one from plaintiff.  *Id.*  Mr. Dias' bid was not originally accepted, but he was later informed that his bid was accepted on May 9, 2016.  Compl. ¶ 11; Def.'s App. at 51.

On May 12, 2016, Ms. Virginia Streva, an agent of HomeTelos, notified Mr. Dias that his bid for purchase did not contain all of the required elements.  *See* Def.'s App. at 53.  Specifically, Ms. Streva advised Mr. Dias that he needed to submit five missing contract components: (1) a deposit of earnest money; (2) initials on form HUD-9548; (3) a date on the Owner Occupant Addendum; (4) three sets of initials on the Lead Based Paint Addendum; and (5) a "Lender Letter" containing "the buyer's name, loan/purchase amount, loan type, and a statement that the buyer's credit has been reviewed."  *Id.*  These revisions were to be submitted to HomeTelos by May 13, 2016.  *Id.*  Mr. Dias submitted the deposit, the initialed HUD form, and the dated Owner Occupant Addendum to HomeTelos on May 13, 2016.  *Id.* at 54.  As for the Lead Based Paint Addendum, Mr. Dias averred that HUD "did not provide any copies of records and reports pertaining to the property" so he would not initial having received them on the form.  *See id.*  Additionally, he requested "another day or two to get the Lender's Letter," because although he initially planned to pay all cash for the home, he had used some of that money to purchase another home after his initial bid was not accepted, and now needed a loan for the balance.  *Id.*

HomeTelos never affirmatively accepted or denied Mr. Dias' request for an extension of time in which to provide the Lender Letter.  HomeTelos did, however, send Mr. Dias' agent a copy of the most recent Lead Based Paint Inspection on the property.  *See* Def.'s Mot. at 3;

---

[1]The following recitations do not constitute findings of fact by the court.  Instead, the recited factual elements are taken from the complaint, the parties' cross-motions, associated briefing, and appended exhibits.  No material factual disputes are involved.

[2] Plaintiff's case was originally filed in Maryland state court and then was removed to federal court by the government before being transferred to this court. *See generally* Transfer Order, ECF No. 1.

[3]Both plaintiff and defendant submitted exhibits attached to their motions for summary judgment.  Defendant's exhibits were consecutively paginated and will be cited as "Def.'s App. at [page number]."  Plaintiff's exhibits were not consecutively paginated, and as such, will be cited as "Pl.'s App. at [page number]," with the page number references to the electronic PDF page number.

Def.'s App. at 3. [4] Three days after Mr. Dias' response, that is, on May 16, 2016, HomeTelos contacted Mr. Dias seeking the signed Lead Based Paint Addendum, which plaintiff had not yet completed. *See* Def.'s App. at 59 ("I have not received the [Lead-Based Paint] correction. If I do not receive it in the next 30 minutes this bid will be canceled."). Mr. Dias returned the signed Lead Based Paint Addendum to HomeTelos later that day, although after more than thirty minutes had passed. *See id.* at 60-62. On May 18, 2016, *i.e.*, two days later and five days after Mr. Dias requested a one-to-two-day extension of time to provide the Lender Letter to HomeTelos, he still had not provided a Lender Letter or proof of the source of financing. *See id.* at 3. HomeTelos informed Mr. Dias that day that his bid was cancelled, stating that contract "revisions [were] not received" as the reason for the cancellation. *Id.* at 63.

The property was put up for sale once again, this time through Sage Acquisitions acting as the agent for HUD. Def.'s App. at 3. Sage Acquisitions "sent a counter offer to [p]laintiff's agent via email on May 24, 2016. Neither [p]laintiff nor his agent responded to the counter offer." *Id.* On May 25, 2016, Sage Acquisition accepted a bid on the property from another buyer and the contract for sale was fully executed on May 31, 2016. *See id.*

Upon transfer from the United States District Court for the District of Maryland, plaintiff's complaint was filed in this court on July 5, 2018. *See generally* Compl. In his complaint, plaintiff avers that his "bid was accepted" and that he "complied with all terms of the contract to buy real property." Compl. ¶ 1. Plaintiff alleges that the government "breached the terms of the [contract for sale] by refusing to sell the [p]roperty to [him] after [he] complied with the terms of the agreement." Compl. ¶ 24. As relief, plaintiff seeks damages of lost profits, compensatory damages, and attorney's fees. Compl. at 8. [5]

Defendant filed its motion for summary judgment on December 18, 2019, *see* Def.'s Mot., and plaintiff filed his cross-motion for summary judgment on January 27, 2020, *see* Pl.'s Cross-Mot. Briefing was completed on March 13, 2020, *see* Def.'s Response and Reply to Pl.'s Mot. ("Def.'s Reply"), ECF No. 44; Pl.'s Reply, ECF No. 48, and a hearing on these motions was held on April 9, 2020. The case is ready for disposition.

---

[4]Plaintiff disputes HomeTelos' handling of the report of the lead paint inspection. *See, e.g.*, Pl.'s Cross-Mot. at 6 ("Defendant never provided the [p]laintiff with a Lead Based Paint Inspection."). However, whether plaintiff himself specifically reviewed the lead-based paint inspection records is of no matter, because plaintiff signed the acknowledgement that he received the lead-related records and reports for the property, *see* Def.'s App. at 62. Plaintiff's signature on the acknowledgement nullifies any claim by plaintiff that he did not receive or review the lead-based paint inspection report.

[5]Plaintiff also seeks specific performance of the contract. Compl. ¶¶ 33-37 (Count II). This court, however, lacks jurisdiction to grant specific performance, as it is an equitable remedy. *See United States v. King*, 395 U.S. 1, 3 (1969). Therefore, the court DISMISSES Count II of the complaint relating to specific performance for lack of subject-matter jurisdiction.

## STANDARDS FOR DECISION

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a) of the Rules of the Court of Federal Claims ("RCFC"). A material fact is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (interpreting Fed. R. Civ. P. 56).[6] A genuine dispute exists when the finder of fact may reasonably resolve the dispute in favor of either party. *Id.* at 250.

The movant bears the burden of demonstrating the absence of any genuine disputes of material fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986), and shall "cite[] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," RCFC 56(c)(1)(A). The court may consider other materials in the record even if not cited by the parties. RCFC 56(c)(3). "[T]he inferences to be drawn . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). If the record taken as a whole "could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'" and summary judgment is appropriate. *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

When both parties have moved for summary judgment, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987) (citation omitted). "The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other." *Id.* "To the extent there is a genuine issue of material fact, both motions must be denied." *Marriott Int'l Resorts, L.P. v. United States*, 586 F.3d 962, 969 (Fed. Cir. 2009).

## ANALYSIS

The dispositive issue in this case is whether plaintiff had an enforceable contract with the government for the sale of its property. Based on the undisputed facts, plaintiff failed to satisfy all conditions precedent to formation of a contract. "[A] condition precedent is one which must happen before either party becomes bound by the contract." *Jones v. United States*, 96 U.S. 24, 28 (1877) (ruling on appeal from the Court of Claims); *see also Park Props. Assocs., L.P. v. United States*, 82 Fed. Cl. 162, 169 (2008) (quoting 13 Richard A. Lord, Williston on Contracts § 38:7 (4th ed. 2000)). Because not all of the conditions precedent to the contract were met, neither party is bound and plaintiff cannot claim that the cancellation of his bid was a breach.

---

[6]Because RCFC 56 mirrors Fed. R. Civ. P. 56, the rules should be interpreted *in pari materia*.

Before a contract for the sale of this property could be formed, numerous conditions had to be met by plaintiff. *See* Pl.'s App. at 106 (contract checklist). Five of those conditions were specifically identified by HomeTelos in its letter on May 12, 2016 to plaintiff as not having been satisfied as of that date: (1) a deposit of earnest money; (2) initials on form HUD-9548; (3) a date on the Owner Occupant Addendum; (4) three sets of initials on the Lead Based Paint Addendum; and (5) a "Lender Letter" containing "the buyer's name, loan/purchase amount, loan type, and a statement that the buyer's credit has been reviewed." Def.'s App. at 53. These requirements were to be submitted to HomeTelos by May 13, 2016. *Id.* Plaintiff took the necessary steps to meet the first three conditions on May 13, 2016, but the last two remained unsatisfied. *See id.* at 54. On May 16, 2016, plaintiff sent the completed and signed Lead Based Paint Addendum to HomeTelos, *see id.* at 60-62, therefore satisfying the fourth condition. The last condition, that plaintiff provide HomeTelos with a Lender Letter to show proof of financing, was never satisfied. Because plaintiff's provision of the Lender Letter to HomeTelos was a condition precedent to contract formation, no contract was ever formed between plaintiff and HomeTelos for the sale of the property. *See Jones*, 96 U.S. at 28 (citing *Governeur v. Tillotson*, 3 Edw. Ch. 348 (N.Y. Ch. 1839)) ("[A] party bound to perform a condition precedent cannot sue on the contract without proof that he has performed that condition.").

Plaintiff unavailingly focuses his arguments on the Lead Based Paint Addendum. Specifically, plaintiff argues that "[d]efendant never provided the [p]laintiff with a Lead Based Paint Inspection" and that "[d]efendant terminated the bid because the [p]laintiff did not sign a form indicating that he had been given a copy of the Lead based paint Inspection Report" within the thirty-minute deadline set by HomeTelos in its letter to plaintiff on May 16, 2016. Pl.'s Cross-Mot. at 6 (capitalization in original). Even if the Lead Based Paint Addendum condition was considered to have been met by plaintiff in a timely fashion, it is undisputed that plaintiff failed to submit the Lender Letter, a required condition precedent to contract formation. Therefore, plaintiff is unable to sue on the contract because defendant owed no duty to complete the sale.

## CONCLUSION

For the reasons stated, the government is entitled to summary judgment. Defendant's motion for summary judgment is GRANTED and plaintiff's cross-motion is DENIED. The clerk is directed to enter judgment accordingly.[7]

No costs.

It is so **ORDERED**.

s/ Charles F. Lettow
Charles F. Lettow
Senior Judge

---

[7]As noted previously, Count II of the complaint is dismissed for failure to state a claim upon which relief can be granted. Additionally, the clerk is directed to STRIKE from the docket plaintiff's filings at ECF Nos. 51 and 54, as they were filed by plaintiff mistakenly.